573 So.2d 1329 (1990)
Willie ARMSTRONG
v.
STATE of Mississippi.
No. 89-KP-0602.
Supreme Court of Mississippi.
December 12, 1990.
*1330 Willie Armstrong, Parchman, pro se.
Mike C. Moore, Atty. Gen., W. Glenn Watts, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ANDERSON, JJ.
ANDERSON, Justice, for the Court:

I. INTRODUCTION

A. Procedural Posture
Willie Armstrong appeals a Panola County Circuit Court denial of his Motion to Set Aside Conviction and Sentence pursuant to the Uniform Post-Conviction Collateral Relief Act. Miss. Code Ann. §§ 99-39-1 to 29. He assigns three errors:
(1) It was error to convict and sentence or even try him, a minor, without certification as an adult by a youth court.
(2) He was denied due process as he was not certified as an adult prior to entering his guilty plea.
(3) Appointed counsel's assistance was ineffective as counsel failed to invoke procedural and substantive safe-guards.
This Court will only address Armstrong's ineffective assistance of counsel claim, as the other two issues are without merit. We only speak to this issue because his attorney, laboring under a conflict of interest, was ineffective in his representation of Armstrong during the sentencing phase of the judicial proceedings.

B. Background
This tragic tale began in January of 1985, in Crenshaw, Mississippi. On January 19, 1985, Willie Armstrong accompanied Linzie Madkins into Lee's Dollar Store, which was being operated by Mrs. Francis Curtis. At this time, Armstrong was a mere fourteen years of age and Madkins, seventeen. It was Madkins' testimony that he planned to rob the dollar store because he needed money. It seemed a certain sum of money was missing at Quitman County High School, and Madkins needed the money from the robbery to replace *1331 the missing money[1]. The facts establish Madkins was the main culprit, for it was he who planned the crime and stole the money. While Linzie was overpowering Mrs. Curtis, Willie stole two Timex watches and $36.15 from the counter "when Linzie told him to." The record clearly indicates Armstrong's status was "tag-along" and his participation in the crime was minimal.
On February 7, 1985, Armstrong was jointly indicted with Madkins for armed robbery in violation of Miss. Code Ann. § 97-3-79 (Supp. 1990).
The circuit court appointed Ted Lucas Smith, public defender of Panola County to represent both defendants.
The defendants were arraigned and after consulting with counsel, both offered pleas of not guilty. After accepting the pleas, a trial date was set for April 1, 1985. However, on March 25, Armstrong signed a "Petition of Defendant for Court to Accept Plea." The following day, he, (along with Madkins), was brought before the court and questioned regarding his decision to withdraw his previous pleas of not guilty and offer a plea of guilty. The court accepted both pleas and proceeded with a sentencing hearing. At the conclusion of the sentencing hearing, the court took the matter of sentencing Armstrong (and Madkins) under advisement. On April 19, the trial court entered an order sentencing Armstrong to thirty years in the custody of the Mississippi Department of Corrections.
Armstrong filed a "Motion to Set Aside Conviction and Sentence" in September of 1988. The Order Denying Post Conviction Relief was entered on January 3, 1989. From the order denying post-conviction relief, Armstrong perfects this appeal.

C. Issue

1. Parties' Contentions
Armstrong contends that he was denied his constitutional right to effective assistance of counsel because of "counsel's failure to invoke procedural and substantive safeguards." He argues his attorney did not advise him of other options and alternatives available to him.
The state retorts that more than sufficient record evidence existed for concluding that Armstrong was provided adequate representation by appointed counsel.

2. Disposition
The Sixth and Fourteenth Amendments to the United States' Constitution operate as sureties for the right to effective assistance of counsel. The Sixth Amendment guarantees, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defence." Wheat v. United States, 486 U.S. 153, 158, 108 S.Ct. 1692, 1696, 100 L.Ed.2d 140 (1988) quoting U.S. Const. amend. VI. (emphasis added)
This adept representation encompasses two broad principles: minimum competence and loyal assistance. Comment, Conflict of Interests in Multiple Representation of Criminal Co-Defendants, 68 J.Crim L. & Criminology 226 (1977). It is this second tenet, the obligation of loyalty, which is at issue in the case sub judice, for one public defender was appointed to represent co-defendants in the same proceeding.
While the Sixth Amendment has been held to secure the right to assistance of counsel by appointment where necessary, See, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), this Court, relying on Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), recognized, though not all multiple representation is prohibited per se, effective assistance of counsel envelops conflict-free representation. Stringer v. State, 485 So.2d 274, 275 (Miss. 1986) (emphasis added) To be sure, duplicitous representation of criminal defendants breeds unique dangers of which a court must be conscious. Wheat v. United States, 486 U.S. at 160, 108 S.Ct. at 1697. At least one legal commentator has postulated that "some form of conflict will occur whenever counsel represents more than one defendant." Tague, Multiple Representation and Conflicts of *1332 Interest in Criminal Cases, 67 Geo.L.J. 1075, 1077 (1979). Therefore, it is incumbent upon courts which confront and which are alerted to possible conflicts of interest to take the necessary steps to ascertain whether conflict warrants separate counsel. Wheat v. United States, 108 S.Ct. at 1697 quoting Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
Further substantiation comes from Holloway v. Arkansas, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978), where the Supreme Court stated, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." Undeniably, it hobbles the defense in a manner distinct from other claims of ineffectiveness, such as those premised on neglect or lack of insight. "A conflict may ... prevent an attorney from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." 435 U.S. at 489-90, 98 S.Ct. at 1181[2].
The rules governing professional responsibility make consent of a criminal defendant a necessary pre-requisite to joint representation. The American Bar Association's Model Code of Professional Responsibility, its Model Rules of Professional Conduct, as well as the Mississippi Rules of Professional Conduct, impose limits on duplicitous representation. See ABA Model Code of Professional Responsibility DR 5-105(C) (1980); Model Rules of Professional Conduct, Rule 1.7 (1984); Miss.Rules of Professional Conduct, Rule 1.7 (1987).
Rule 1.7(b) of the Miss. Rules of Professional Conduct delineates the two-prong test that must be met before a lawyer undertakes joint representation. The rule provides, in relevant part,

RULE 1.7 CONFLICT OF INTEREST: GENERAL RULE
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless the lawyer reasonably believes:
(1) the representation will not be adversely affected; and
(2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.
In layperson's terms, Rule 1.7 simply means
[W]here the interests of the clients are in some manner antagonistic to one another, before any lawyer is authorized to assume dual representation, ... [she] must first satisfy [herself] that there is no objective reason why [she] cannot, despite such divergence of interests, faithfully represent them both. If this cannot be met, the lawyer should not accept employment in the first place (or terminate it, if begun). Secondly, even if the lawyer reasonably (and from an objective point of view) believes [she] can faithfully represent dual parties with adverse interests, [she] still must fully explain all implications of the advantages as well as the risks of his representation to both parties, and assure [herself] that they both have given knowing and informed consent.
Hartford Acc. & Indem. Co. v. Foster, 528 So.2d 255 (Miss. 1988).
The comment interpreting the rule would prohibit all duplicitous representation; specifically, it states "the potential for conflict of interest in representing multiple defendants in a criminal case is so grave, that ordinarily a lawyer should decline to represent more than one co-defendant." Moreover, "[s]uch representation not only constitutes a breach of professional ethics, it also invites disrespect for the integrity of the Court." Wheat v. United States, 486 *1333 U.S. at 162, 108 S.Ct. at 1698. It is also detrimental to the independent interest of the trial judge who is imbued with the responsibility of insuring trials are conducted within the ethical confines of the profession and that legal proceedings are just and fair to the interested as well as the uninterested observer. See generally Wheat v. United States, 486 U.S. at 160, 108 S.Ct. at 1697.
It is well-settled that requiring or permitting one attorney to represent co-defendants, commonly referred to as joint representation, is not per se violative of the constitutional guarantees of effective assistance of counsel; however, prejudice is presumed if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance. Burger v. Kemp, 483 U.S. 776, 783, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638, 650 (1987) (emphasis added). This Court adopted the above standard in Stringer v. State, 485 So.2d 274 (Miss. 1986), where it was held "[i]n order to demonstrate a violation of his Sixth Amendment Rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Id.
As an initial matter, the overlap of counsel so infected representation as to constitute an active representation of competing interests. This was not a case involving highly theoretical potential for conflict but one where it might easily have been anticipated that the defense attorney would argue that the actions of the one should not be attributed to the other which would create a conflict in the case and tend to throw more blame on the co-defendant Madkins than on Armstrong. The converse is also true and counsel may opt to not say or do anything in mitigation for fear that to do so would characterize one as being more culpable than the other. This is exactly what occurred in the case sub judice, for the public defender neither said nor did anything in mitigation at the sentencing hearing in behalf of either Armstrong or Madkins.
For example, counsel might have brought to the court's attention the fact Armstrong was a very poor student, operating at a level well-below his seventh grade classification.
He might also have mentioned the principal of and teachers at the school Armstrong attended, stated they were not aware of any disciplinary problems attributable to Armstrong.
Attorney below could have told the court of and indeed highlighted Armstrong's youth, size, and inexperience. At the time of the crime and sentencing hearing, he was fourteen years old, stood 5'1" in height, and weighed only 85 pounds. He was the youngest of nine children, being reared by his father in a single parent household, as his mother died when he was an infant. At the time of the crime, he was totally dependent on his father who was dependent on welfare. Unfortunately, welfare was his surrogate parent for fourteen years, only to be replaced by the penal system. Willie Armstrong, at the tender age of fourteen, when others his age were anxiously anticipating the future and participating in such school-related activities as playing in the band, on basketball and football teams, graduated from the seventh grade to the Mississippi State Penitentiary.
Most significantly, the defense was prejudiced by the attorney not presenting detailed evidence concerning the circumstances of the crime, apparently fearing that too much information would incriminate one, Madkins, more than the other, Armstrong. Counsel could have mentioned, for the record clearly indicates, that it was Madkins who masterminded the plan to rob the store; furthermore, it was he who actually wielded the knife and stabbed the victim. Armstrong, for his part, merely followed Madkins lead and stole the watches and money upon Madkins' direction.
Certainly ameliorative evidence is of extreme importance during the sentencing phase of judicial proceedings; thus, it is difficult to comprehend why defense counsel did not allocute in Armstrong's behalf. *1334 If ever there existed an "allocutable case", surely this is it. We accord much discretion to attorneys in areas of defense strategy, See, Murray v. Maggio, 736 F.2d 279, 292 (5th Cir.1984), so much so that we presume that decisions made are strategic and hesitate to infer from silence, an absence of strategy. Stanley v. Zant, 697 F.2d 955 (11th Cir.1983); moreover, we consider remaining silent a conscious decision and protected by attorney strategy. There is however, a limit. Counsel went beyond the limit on that day.
Even if we begin with the proposition that counsel's conduct is presumed to be within the wide range of reasonable professional conduct, certain indispensable duties are required of an attorney representing a criminal defendant. Leatherwood v. State, 473 So.2d 964, 969 (Miss. 1985). These duties include, but are certainly not limited to, assisting the defendant, informing her of important decisions and developments, asserting the client's position with zeal. Id. Zealous advocacy is the duty at issue in the case today before the Court. The public defender appointed to Armstrong's case violated his client's due process rights through his denial of "undivided loyalty." Armstrong's case is similar to Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), as the conflictual representation present in both was invidious and could easily have escaped detection on review. The poignant words of the Holloway Court are most applicable to the case sub judice and will be quoted here:
"When there is a conflict of interest such as exists in this case, the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often given no clue to the erosion of zeal which may ensue from divided loyalty." Castillo v. Estelle, 504 F.2d 1243, 1245 (5th Cir.1974). "Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing... . The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations has effectively sealed his lips on crucial matters."
Holloway v. Arkansas, 435 U.S. at 489, 98 S.Ct. at 1181.
Along the same line, it was fundamentally unfair for the trial court to appoint the same counsel to represent both Armstrong and Madkins without first disclosing to them the potential dangers of joint representation by counsel laboring under a conflict. In fact, this right to counsel, conflict free, is attendant to the Sixth Amendment right to effective assistance of counsel. See generally, Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). Furthermore, in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court stated that an actual conflict of interest adversely affecting a lawyer's performance renders assistance ineffective. This right of effective assistance of counsel is so fundamental, various public defenders' offices have rules precluding representation of more than one defendant involved in the same offense. Burger v. Kemp, 483 U.S. at 796-7, 107 S.Ct. at 3126-7. Under the rules governing professional responsibility, consent of a criminal defendant is a necessary pre-requisite to joint representation, and trial court inquiry into whether the defendant has made a knowing and voluntary waiver of his right to conflict-free counsel is imperative. Burger v. Kemp, 483 U.S. at 798, 107 S.Ct. at 3127.
In the case sub judice, at no point does the record indicate that the court, the defense attorney, or the prosecutor informed the fourteen-year-old defendant of the precise manner in which he might be prejudiced by the public defender's dual representation of himself and Madkins. As an actual conflict of interest which adversely affected counsel's performance was shown, the trial court reasonably should have known the conflict existed; failure of the trial court to so inform Armstrong constitutes a clear violation of the procedure prescribed in U.S. v. Garcia, 517 F.2d 272 (5th Cir.1975), for accepting a waiver of the *1335 right to conflict-free representation. See also Cuyler v. Sullivan, 446 U.S. at 348-49, 100 S.Ct. at 1718-19. (trial court who knows or reasonably should know that a particular conflict exists, is required to initiate an inquiry into the propriety of multiple representation). Failure of the court to inform Armstrong, also resulted in a violation of the defendant's Sixth Amendment right to effective assistance of counsel. The procedure which should have been followed is outlined below.
As in Rule 11 procedures, the [district] court should address each defendant personally and forthrightly advise him of the potential dangers of representations by a counsel with a conflict of interest ... The court should seek to elicit a narrative response from each defendant that he has been advised of his right to representation, that he understands that details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney ... and that he voluntarily waives his Sixth Amendment protections.
United States v. White, 706 F.2d 506, 509 (5th Cir.1983) quoting United States v. Garcia, 517 F.2d at 278.
As the trial court's actions in the case sub judice, fall short of the affirmative judicial involvement in the waiver process outlined in Garcia, this inquiry need go no further. Additionally, since Armstrong was represented by an attorney with an actual conflict of interest and received ineffective assistance of counsel as a matter of law, reversal is automatic irrespective of a showing of prejudice unless appellant knowingly and intelligently waived his constitutional right to conflict free representation. Since no such waiver was present in this case, reversal is imperative.

II. CONCLUSION
For the reasons stated in the forgoing discussion, the decision of the circuit court denying Armstrong's Motion for Post Conviction Relief should be reversed and the cause remanded for a new sentencing hearing.
REVERSED AND REMANDED FOR A SENTENCING HEARING.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., dissents.
NOTES
[1] Although the record does not specifically state, Madkins was involved in some way with the money reported missing at Quitman High School.
[2] This is precisely what happened in the case at bar. Defense counsel, laboring under a conflict, failed to allocute at sentencing and adequately argue in the behalf of defendant, Armstrong, during the sentencing hearing. See infra text at 1333-1335 for a more detailed discussion.