666 So.2d 810 (1995)
Lester James SMITH
v.
STATE of Mississippi.
No. 93-KA-00240-SCT.
Supreme Court of Mississippi.
December 21, 1995.
*811 James P. Vance, Grenada, for appellant.
Michael C. Moore, Attorney General, Jackson, Pat S. Flynn, Ass't Attorney General, Jackson, for appellee.
En banc.
SMITH, Justice, for the Court:
Lester James Smith was convicted in the Circuit Court of Monroe County for selling cocaine to Tommy Ivey, an undercover agent with the Mississippi Bureau of Narcotics on January 14, 1991. Lamont Latham testified about his and Smith's participation in two simultaneous sales of drugs. The court appointed counsel had represented both Smith and Latham in plea negotiations prior to trial though Latham was not indicted for the offense at issue. Upon conviction, Smith was sentenced to serve thirty years in the custody of the Mississippi Department of Corrections.
Aggrieved, Smith appeals to this Court citing as his sole issue:
WHETHER DEFENDANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS SACRIFICED BECAUSE HIS ATTORNEY WAS ALSO THE ATTORNEY FOR A WITNESS FOR THE STATE OF MISSISSIPPI WHO WAS CHARGED WITH THE SAME CRIME, ALTHOUGH NOT INDICTED?
A thorough review of this issue leads this Court to conclude that the public defender's representation of Latham in plea negotiations, who was a key eyewitness for the State, as well as Smith in cases originating from the double sale of drugs occurring at the same time, constituted an unfortunate irreparable actual conflict of interest once the trial began. Smith and Latham had directly opposing interests and this Court must reverse and remand under the authority of Armstrong v. State, 573 So.2d 1329 (Miss. 1990).

STATEMENT OF FACTS
Lester James Smith sold cocaine to undercover agent, Tommy Ivey, of the Mississippi Bureau of Narcotics on January 24, 1991. Ivey wore a body wire during the transaction and recorded the entire event. The transaction was also monitored by other agents. While this transaction was taking place, another informant, Willie Hall, purchased drugs at the same location from Smith's friend, Lamont Latham. Latham testified about Smith's participation in the double sale. Latham was not indicted for this charge. Smith was not indicted until June 1, 1992. Smith was represented by a public defender, *812 appointed by the court on June 2, 1992. At trial, Smith took the stand in his own defense and denied the charges.
On direct examination, Latham indicated that his reason for testifying was because he "felt it was in [his] best interest," and not because of any bargains with the State. On cross-examination, Latham indicated that the public defender had previously represented him and should be aware of his history with drugs and narcotics, and for which past incidents/charges he had plead guilty. At the time of Smith's trial, Latham had been indicted for at least five counts of sale of cocaine with one charge reduced to a possession of cocaine. The other four files had been "retired." On the reduced possession of cocaine charge, Latham had already plead guilty on October 10, 1991, and the sentencing was deferred until further order of the Court.
This Court is cognizant of the burdens placed on public defenders throughout this state, but particularly in rural areas. In the case at bar, the record indicates that the public defender, unassisted by staff or co-counsel, attempted to vigorously defend both Latham and Smith on various charges, both related and unrelated, in the Monroe County Circuit Court. He was simply carrying out his duties under appointment by the trial judge. Unfortunately, the responsibilities placed upon the public defender by the trial court covered ultimately resulted in the conflict which later arose.
The public defender had represented Latham for all five charges. However, he did not represent Latham in regard to the case at bar in which he was implicated (but not indicted) as a co-defendant. As this record indicates, the public defender quizzed Latham vigorously in regards to the motives behind his testimony against Smith. The record also indicates that the public defender continued to represent both Latham and Smith through July 30, 1993, when the October 1991 charge to which Latham pled guilty was retired to the files.

DISCUSSION OF LAW
A criminal defendant is entitled to the effective assistance of counsel. The effective right of counsel encompasses the right to representation by an attorney who does not owe conflicting duties to other defendants. Stringer v. State, 485 So.2d 274, 275 (Miss. 1986). Undivided loyalty of defense counsel is essential to the due process guaranty of the Fifth Amendment. See also Littlejohn v. State, 593 So.2d 20, 22 (Miss. 1992) ("Under our system of jurisprudence, if a lawyer is not one hundred percent loyal to his client, he flunks.")
The facts and circumstances of this case suggest that an actual irreparable conflict of interest existed. Latham had pled guilty to a previous crime and sentencing was deferred. The public defender had negotiated that agreement with the State. Latham, when asked on cross-examination why he was testifying against Smith indicated that it was in his best interest. In the course of the cross-examination the public defender asked Latham whether he had plead guilty to a charge. Latham responded, "You was my lawyer, you could tell me." An attorney under normal cross-examination would have explored Latham's answers further. Instead, the cross-examination was terminated prematurely and this Court is left to wonder why. Obviously, this line of questioning exposed a real conflict of interest which could only be remedied by the court ordering a mistrial. The court should have then appointed new counsel for Smith and the unfortunate trap in which the public defender found himself would have been disarmed. The public defender continued to represent both Latham and Smith through July 30, 1993, when the charge to which Latham plead guilty to in October 1991 was retired to the files. This Court is left with the inescapable conclusion that the action of retiring the case to the files was taken to reward Latham for his cooperation with the State in testifying against Smith.
Generally, a showing of prejudice is not necessary. U.S. v. Alvarez, 580 F.2d 1251, 1259 (5th Cir.1978). This Court has noted that "prejudice is presumed only if the defendant demonstrates that counsel `actively represented conflicting interests' and that `an actual conflict of interest adversely affected *813 his lawyer's performance'." Cabello v. State, 524 So.2d 313, 316 (Miss. 1988). The sudden curtailing of what had been up to that point a vigorous cross-examination of Latham by the public defender is compellingly indicative of an actual conflict of interest which adversely affected the public defender's performance as counsel for Smith. The public defender should have been removed as counsel by the trial court at this moment.
Latham's testimony became a centerpole of the State's case against Smith. In Littlejohn, this Court stated, "[f]rom the record we must conclude there was an irreparable conflict of interest ... The testimony of Thomas was the centerpole of the State's case against Littlejohn." Littlejohn v. State, 593 So.2d 20, 22 (Miss. 1992). It is difficult to conclude that Latham had nothing to lose or gain by his answers in a situation where he was not yet indicted in the simultaneous double sale of drugs. In actuality, even if it were revealed that in fact there were no deals, Latham had everything to gain or lose facing a possible indictment.
This Court in Littlejohn, further addressed the potential problems that attorneys might encounter when representing multiple defendants in criminal cases, as the Court stated:
Representing multiple defendants in a criminal case can be accomplished without violating the lawyer's duty to any of his clients, and one attorney can indeed upon occasion meet the needs of all better. Holloway v. Arkansas, 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426, 433 (1978). It is nonetheless a perilous undertaking, requiring counsel to be especially wary for events or circumstances that can instantly transfer a potential into an actual conflict of interest.
Id. 593 So.2d at 26.
It is thus this second tenet of the obligation of loyalty by the public defender which is central to the question now before this Court. It would be highly unlikely, yet possible, that the public defender was not told by the State of the double sale of drugs by Latham and Smith and the possibility that an additional indictment could be forthcoming. If the public defender had such knowledge he would absolutely have had a duty to advise Latham that his best interest would best be served by cooperating with the State and ultimately testify against Smith at a subsequent trial. The continued representation of both Latham and Smith by the public defender thereafter until July 30, 1993 when the charge to which Latham had already plead guilty to in October of 1991 was retired to the files without being sentenced only serves to further raise red flags of concern with this Court as to the actual conflict which arose in the trial.
This Court also notes that in addition to the duty imposed on defense attorneys, there exists the responsibility of the prosecutor and trial court to notify a defendant concerning potential conflicts of interest by counsel. In Armstrong v. State, 573 So.2d 1329 (Miss. 1990), the Court stated:
In the case sub judice, at no point does the record indicate that the court, the defense attorney, or the prosecutor informed the fourteen-year-old defendant of the precise manner in which he might be prejudiced by the public defender's dual representation of himself and Madkins. As an actual conflict of interest which adversely affected counsel's performance was shown, the trial court reasonably should have known the conflict existed; failure of the trial court to so inform Armstrong constitutes a clear violation of the procedure prescribed in U.S. v. Garcia, 517 F.2d 272 (5th Cir.1975), for accepting a waiver of the right to conflict-free representation. See also Cuyler v. Sullivan, 446 U.S. [335] at 348-49, 100 S.Ct. [1708] at 1718-19 [64 L.Ed.2d 333 (1980)]. (Trial court who knows or reasonably should know that a particular conflict exists, is required to initiate an inquiry into the propriety of multiple representation). Failure of the court to inform Armstrong, also resulted in a violation of the defendant's Sixth Amendment right to effective assistance of Counsel. The procedure which should have been followed is outlined below.
As in Rule 11 procedures, the [district] court should address each defendant personally and forthrightly advise him of the potential dangers of representations *814 by a counsel with a conflict of interest ... The court should seek to elicit a narrative response from each defendant that he has been advised of his right to representation, that he understands that details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney ... and that he voluntarily waives his Sixth Amendment protections.

United States v. White, 706 F.2d 506, 509 (5th Cir.1983), quoting United States v. Garcia, 517 F.2d at 278.
Armstrong, 573 So.2d at 1334.
Applying Armstrong, to the case at bar, the prosecutor certainly was aware of the double sale of drugs involving both Latham and Smith. He should have informed the public defender. Both the prosecutor and the public defender should have informed the circuit judge, who in turn should have followed the procedure set out in Armstrong taking the appropriate required action. See also, Littlejohn v. State, 593 So.2d at 26. The evidence submitted against Smith was overwhelming as to guilt. But for this error Smith's case could have easily been affirmed.

CONCLUSION
Latham's testimony became a centerpole of the State's case against Smith. The dual representation by the public defender of both Latham and Smith constituted an actual conflict of interest. The public defender's loyalty to Latham was the only legitimate reason the cross-examination was prematurely terminated by the public defender. The commands of Armstrong apply because of the conflict of interest. This Court must reverse and remand Smith's case.
REVERSED AND REMANDED.
DAN M. LEE, C.J., PRATHER and SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
McRAE, J., specially concurs with separate written opinion.
MILLS, J., not participating.
McRAE, Justice, specially concurring:
I concur with the majority that there appeared to be a conflict of interest. However, I depart from the majority to the extent that the trial judge was not under a duty during the trial to interrupt the trial and grant a new trial without some type of objection being made to the court. While it is true that the responsibility should be placed on the district attorney, and he knew of the deal, as well as a public defender, none was brought to the attention of the court. Armstrong v. State, 573 So.2d 1329 (Miss. 1990) is not authoritative for the trial judge to take this on his own. As a matter of fact, Armstrong dealt with a plea of guilty, in which at the plea, the court said that it was incumbent upon the trial court to also be the one to advise in addition to the attorneys. It would be a nightmare for a trial judge to now be placed with the responsibility of being another lawyer for the defendant, being the impartial moderator for both sides and conducting the trial.