# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 98-CP-00302 COA

**TOMMY GENE BLAYLOCK**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                     **APPELLEE**

DATE OF JUDGMENT:             12/15/97
TRIAL JUDGE:                  HON. C. E. MORGAN III
COURT FROM WHICH APPEALED:    CARROLL COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       TOMMY GENE BLAYLOCK
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY:  JOLENE M. LOWRY
DISTRICT ATTORNEY:            DOUG EVANS
NATURE OF THE CASE:           CIVIL - POST CONVICTION RELIEF
TRIAL COURT DISPOSITION:      POST-CONVICTION RELIEF DENIED
DISPOSITION:                  AFFIRMED - 12/30/98
MOTION FOR REHEARING FILED:   1/25/99
CERTIORARI FILED:
MANDATE ISSUED:               4/14/99

BEFORE THOMAS, P.J., COLEMAN, AND HINKEBEIN, JJ.

HINKEBEIN, J., FOR THE COURT:

## FACTS

¶1. On May 18, 1995, Tommy Gene Blaylock (Blaylock) pled guilty in the Circuit Court of Carroll County to the December 1994 murder of Sherry Nix and the aggravated assault of Michael Sanders. At that time he was sentenced to serve life imprisonment on the murder charge and twenty years on the charge of aggravated assault in the custody of the Mississippi Department of Corrections. His sentence on the aggravated assault was to run concurrent to his life sentence. On April 17, 1997, Blaylock filed a motion for post-conviction relief, asserting the following allegations:

**I. DID THE DEFENDANT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTER HIS PLEAS OF GUILTY?**

**II. WHETHER THE DEFENDANT WAS MIS-ADVISED BY THE TRIAL COURT AND THE PUBLIC DEFENDER REGARDING THE MINIMUM SENTENCE ON THE CHARGE OF AGGRAVATED ASSAULT?**

**III. DOES A CONFLICT OF INTEREST EXIST BY AN ATTORNEY EMPLOYED BY THE COUNTY BOARD OF SUPERVISORS IN ANY CASE INVESTIGATED AND/OR PROSECUTED BY THE COUNTY SHERIFF IN THE SENSE THAT THE DEFENDANT REPRESENTED BY SUCH ATTORNEY SHOULD BE INFORMED AND GIVE CONSENT TO THE ATTORNEY'S REPRESENTATION?**

**IV. DID DEFENDANT TOMMY BLAYLOCK RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL?**

¶2. Following an October 10, 1997 hearing, the post-conviction relief was denied by the circuit court in an order dated November 13, 1997. On November 26, 1997, Blaylock filed a motion to alter or amend the order denying post-conviction relief on the issue of his attorney's alleged conflict of interest. On December 15, 1997, the court amended its earlier order but let stand the denial of post-conviction relief. Blaylock filed his notice of appeal to this Court on January 5, 1998. Upon reviewing the record, we hold this appeal to be without merit and accordingly, we affirm the decision of the lower court in denying post-conviction relief.

## DISCUSSION

**I. DID THE DEFENDANT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTER HIS PLEAS OF GUILTY?**

**II. WHETHER THE DEFENDANT WAS MIS-ADVISED BY THE TRIAL COURT AND THE PUBLIC DEFENDER REGARDING THE MINIMUM SENTENCE ON THE CHARGE OF AGGRAVATED ASSAULT?**

¶**3.** Blaylock argues that his guilty plea was involuntary based on the alleged failure of the trial court to inform him of the mandatory minimum and maximum sentences which the court could impose for the crime of aggravated assault. In his closely related second assignment of error, he claims he was misled by the trial court and the public defender regarding the minimum sentence for the crime of aggravated assault. The State responds that the transcript of Blaylock's plea hearing belies his assertions. We agree with the State.

¶4. The Mississippi Supreme Court has held that a guilty plea is involuntary where the trial court fails to inform the defendant of either the minimum or maximum sentence that could be imposed. *Ward v. State*, 708 So. 2d 11 (¶30) (Miss. 1998) (citing *Gibson v. State*, 641 So. 2d 1163, 1166 (Miss. 1994)). However, the court applies a harmless error analysis where the defendant is not informed of the minimum sentence. *Smith v. State*, 636 So. 2d 1220, 1226 (Miss. 1994). As such, if the failure to be informed of the minimum sentence would have had no effect on the decision to plead guilty, such an error would not be fatal. *Id.* In the case *sub judice*, the record shows that the trial judge extensively questioned Blaylock as to

his understanding of his guilty pleas as well as whether they were made voluntarily. The transcript of the plea hearing reveals Blaylock's affirmative responses. The trial judge informed Blaylock of the maximum and minimum sentences for the crime of murder. In recounting the maximum sentence of twenty years for aggravated assault, the judge informed Blaylock there was no minimum sentence for the crime and asked if he understood. Again, Blaylock stated that he understood. The record of Blaylock's guilty pleas is replete with explanations by the trial judge of the charges and the consequences of those charges. All of this was done prior to accepting guilty pleas by Blaylock. In addition, the record reveals that the State was recommending that Blaylock's sentences be served concurrently in exchange for a guilty plea. Blaylock's public defender later testified at the October 10, 1997 post-conviction relief hearing that Blaylock had voluntarily and intelligently made the decision to plead guilty in light of the sentence recommendation. This Court holds Blaylock's argument that his pleas were involuntary and unintelligently entered is without merit.

**III. DOES A CONFLICT OF INTEREST EXIST BY AN ATTORNEY EMPLOYED BY THE COUNTY BOARD OF SUPERVISORS IN ANY CASE INVESTIGATED AND/OR PROSECUTED BY THE COUNTY SHERIFF IN THE SENSE THAT THE DEFENDANT REPRESENTED BY SUCH ATTORNEY SHOULD BE INFORMED AND GIVE CONSENT TO THE ATTORNEY'S REPRESENTATION?**

¶5. Blaylock argues that since his public defender, Leland Jones, also represented the Carroll County Board of Supervisors, there was an actual conflict of interest. Blaylock asserts that since he was unaware of this situation and did not waive his right to conflict-free representation, his guilty plea was not knowing, intelligent, and voluntary. He also claims the trial court was in error by not informing him of the conflict *sua sponte*. He relies heavily on Mississippi Bar Ethics Opinion No. 224 in establishing the purported conflict of interest. That opinion barred representation of criminal defendants by attorneys who were also employed by county boards of supervisors. The State responds that the ethics opinion was not made effective until nearly eight months after Blaylock's guilty pleas, and as such, no conflict existed at the time. The State also argues that Blaylock fails to cite anything which Jones failed to do in representing him that could be attributed to the purported conflict of interest. As such, the State claims Blaylock fails to meet his burden to show error in the trial court's denial of post-conviction relief. We agree with the State.

¶6. The Mississippi Supreme Court holds that "[t]he effective right of counsel encompasses the right to representation by an attorney who does not owe conflicting duties to other defendants." *Smith v. State*, 666 So. 2d 810, 812 (Miss. 1995) (quoting *Stringer v. State*, 485 So. 2d 274, 275 (Miss. 1986)). "Moreover, undivided loyalty of defense counsel is essential to the due process guarantee of the Fifth Amendment."*Littlejohn v. State*, 593 So. 2d 20, 23 (Miss. 1992) (citing *U.S. v. Alvarez*, 580 F.2d 1251, 1256 (5th Cir. 1978)). Mississippi cases dealing with attorneys representing two or more defendants jointly charged provides the two prong analysis we will follow in the case *sub judice*. Under the first prong, it must be determined if the attorney was faced with an actual conflict of interest as opposed to a possibility of conflict. *Stringer*, 485 So. 2d at 275. The court in *Stringer* takes its definition of actual conflict from *Irving v. Hargett*, 518 F. Supp. 1127, 1143 (N.D. Miss. 1981), which states:

> If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. The interests of the other client and the defendant are sufficiently adverse

if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.

*Id.* (citing *Zuck v. State of Alabama*, 588 F.2d 436, 439 (5 Cir.1979) ( cert. denied 444 U.S. 833 (1979)). Under the second prong, "prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Smith v. State*, 666 So. 2d 810, 812-13 (Miss. 1995) (quoting *Cabello v. State*, 524 So. 2d 313, 316 (Miss. 1988)).

¶7. In the case *sub judice*, we first look to see if there was an actual conflict in Leland Jones's representation of Blaylock. Mississippi Bar Ethics Opinion No. 224 prohibits an attorney employed by a county board of supervisors from representing criminal defendants in justice court, county court, or circuit court. The opinion was rendered April 10, 1995, approximately a month before Blaylock's guilty plea but stated it would be effective concerning representation undertaken from and after January 1, 1996. As such, we find it is not controlling as it pertains to this case. Rather, we look to the test of whether Jones owed a duty to the Carroll County Board of Supervisors to take some action detrimental to Blaylock. *Irving*, 518 F. Supp. at 1143. The record reveals nothing to suggest that such a duty existed and as such, we find no actual conflict. Assuming *arguendo* that an actual conflict was found, we would address the second prong of the test as to whether such conflict of interest adversely affected the lawyer's representation of the defendant and resulted in prejudice. *Smith*, 666 So. 2d at 812-13. Again, the record offers nothing to suggest that Blaylock's defense suffered or that his decision to plead guilty would have been different. Faced with two eyewitnesses to the murder and aggravated assault, Blaylock was able to obtain a plea bargain that allowed his sentences to run concurrently. As such, there was no evidence that the claimed conflict of interest resulted in any prejudice to Blaylock. We find this assignment of error to be without merit.

## IV. DID DEFENDANT TOMMY BLAYLOCK RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL?

¶8. Blaylock argues that he was denied effective assistance of counsel, and as a result his guilty plea was not knowing, intelligent, and voluntarily. The State counters that Blaylock offers nothing to support his claim. We agree with the State. In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Blaylock fails to demonstrate how Jones's performance was so deficient and prejudicial that but for the attorney's conduct, he would not have entered his plea. The record reveals that the State's case against Blaylock was strong, with two eyewitnesses to the murder and aggravated assault as well as Blaylock's own statements which contradicted the physical evidence. By entering his plea, Blaylock was able serve his sentences concurrently as opposed to the consecutive sentences he faced if convicted at trial. As such, we find this assignment of error to be without merit.

## ¶9. THE JUDGMENT OF THE CIRCUIT COURT OF CARROLL COUNTY DENYING POST CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CARROLL COUNTY.

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**