EDITH H. JONES, Chief Judge,
dissenting:
With due respect to my colleagues, I cannot agree that the Mississippi courts’ denial of relief to the Saltses was “contrary to” the Supreme Court’s pronouncements. In Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Court emphasized, “If [§ 2254(d)’s] standard is difficult to meet, that is because it was meant to be .... It preserves authority to issue the writ where there is no possibility fairminded jurists could disagree that the state court’s decision conflicts with [the Supreme] Court’s precedents. It goes no farther.” Harrington, 131 S.Ct. at 786 (emphasis added) (internal quotation marks and citation omitted). The majority instead critiques the Mississippi courts’ reasoning in a manner more appropriate to direct appellate review than to the deferential review countenanced by AEDPA standards. To be precise, the majority totally overlooks that federal courts may inquire only into the propriety of state court decisions, not the correctness of all their reasoning. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir.2002) (en banc). Even more pertinent, the majority erroneously faults the Mississippi courts for failing to cite and ruling “contrary to” Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). The Supreme Court holds, however, that state courts need not expressly cite or even be aware of Supreme Court precedents—as long as their decisions do not contradict the precedents. Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002).
*484 A proper AEDPA review of the state court record and judicial decisions reveals, in my view, a very real possibility fair-minded jurists could disagree whether the defendants timely invoked their counsel’s alleged conflict of interest and were entitled to relief.[1] Based on this failure, Holloway did not apply and the state courts did not “contradict” Holloway in requiring proof of an actual conflict before reversing the verdict. See Cuyler v. Sullivan, infra. Nor was the state courts’ “decision” “unreasonable” when measured against the Supreme Court precedents. 28 U.S.C. § 2254(d)(1). We have no authority to overturn these convictions.
To explain the basis for the state court decisions, I supplement the majority’s description of the record, review the applicable Supreme Court precedents, and describe the flaws in the majority’s reasoning.

1. Background

The majority opinion under-emphasizes the extent to which the Saltses successfully delayed trial and fails to recount the multiple deadlines for pretrial motions. Significantly, it also fails to convey the trial court’s finding that the defense’s motion regarding joint representation was untimely-
Michael and Marie Salts were convicted of embezzlement in connection with their funeral-home business. They collected and kept for themselves funeral insurance payments from customers, many of them old and poor, whose insurance policies had actually been terminated. They were indicted on May 12, 2003, but their trial did not begin until October 3, 2005.
The Saltses’ first attorney, Steve Farese, was retained on July 3, 2003, and moved to withdraw on September 2, 2003. His motion to withdraw cited “two separate irreconcilable conflicts” which would leave “Defense Counsel [] ethically and legally unable to defend either of the Defendants.” It also noted “that the Defendants have been unable to fulfill the terms of their agreement of employment of Mr. Farese.” The court granted the motion, set a status hearing for September 29, 2003, and continued the case until sometime during the February 2004 term. Apparently beginning at the time Farese was released, the Saltses were represented by Michael Thorne.[2]
Trial was scheduled for March 3, 2004. The Saltses requested a continuance on February 23. Thorne said he had not yet received discovery from Farese, though he had requested it on February 13 (three weeks before trial was scheduled). He also noted that defendants might need to obtain an accountant to testify. He said that he could not properly prepare to represent the defendants without more time. The state did not object; the motion was granted and trial was rescheduled for June 22, 2004.
On June 9, the Saltses requested a second continuance. Thorne said he had been unable to prepare for trial properly “due to other litigation involving these defendants.” He again cited the possible need *485 for an accountant and said he could not render adequate assistance if the case were not continued. The state did not object to this request, and it was granted. Trial was rescheduled for October 11, 2004.
On September 28, the Saltses requested a third continuance. Thorne repeated his claim that he had not been able to prepare properly due to other litigation involving these defendants, and he said that he could not render adequate legal assistance absent a continuance. This time, the state was opposed. The state observed that this was the third trial date and said it risked real impairment of the prosecution in light of the age of the victims who would serve as witnesses. Five of the six victims ranged from sixty-five to eighty-one years of age, and each victim was a material, essential witness. Nevertheless, the court granted a continuance. Trial was next scheduled for February 28, 2005. It was continued again, however, after the newly assigned judge recused himself.
Trial was next scheduled for June 27, with a proviso that it might be continued if renovation of the courthouse was not complete by the trial date. On June 24, the Saltses moved for a fifth continuance, the fourth at their request. Thorne said that he would be leaving town on June 26, to travel to Florida for his wife to seek medical treatment. He also said he had heard that the courthouse was still undergoing renovations.[3] The state countered that it was willing to assemble a Prentiss County jury in a neighboring county, even if the Prentiss County courthouse was unavailable, and reiterated its objections to further delay, noting that the oldest victim was now eighty-two. The court granted a fifth continuance and scheduled trial for September 6, 2005, setting deadlines for discovery and pretrial motions of July 15 and August 1 respectively. Both parties were explicitly ordered to “file all motions having to do with (1) change of venue, (2) discovery, (3) admissibility of evidence, (4) in limine and any other matters on or before the 1st Day of August, 2005, or [they] shall be deemed waived by the court.”
The court extended the discovery deadline in response to an agreed-to request by Defendants, which was “due to a medical emergency.” It also extended the motion deadline to August 5. Defendants filed their witness list on August 3. Thorne filed various motions for the Saltses on the deadline of August 5, including a motion for change of venue, a motion to produce sealed records, a motion to produce the grand jury list, a motion to dismiss, and a motion for discovery of additional items.
On August 16, the day before the motion hearing, the Saltses moved again for continuance, the sixth continuance and the fifth at their request. The motion said Thorne’s father had become seriously ill and was in the hospital, and requested a delay of the motion hearing. The court granted the motion, continuing the trial and setting the motion hearing for September 6.
The court granted the Saltses’ motion for a transfer of venue and set a new trial date—the seventh—of October 3, 2005, and a new deadline for “all pretrial motions” of September 27, “or such motions and matters shall be deemed waived by the court,” offering both parties a third deadline for pretrial motions, even after a number of pretrial motions had been dealt with.
*486 The Saltses moved for a seventh continuance on September 28, “due to illness in Defendant counsel’s immediate family.” Thorne also requested “additional time in which to prepare for the trial of this matter to properly defend this case.” He did not in this motion, as he had in previous motions, say he would be unable to represent the defendants without additional time.
On September 29, the Saltses fired Thorne, citing “a difference of opinion on the way this case should be represented.” On Friday, September 30, Jim Waide, their new attorney, filed an entry of appearance. On Monday, the morning of trial, almost a week after the third final motions deadline, Waide entered a motion to dismiss or continue, arguing that there was “an obvious conflict of interest” between the defendants. He argued that separate attorneys would each be able to argue that his client had not been working at the business during the relevant period, but Waide could not make this argument as joint counsel. The trial court denied the motion based in part on its recollection that the Saltses had waived any conflict. The court said that this appeared to be
another of the last-minute tactics—I’m not going to grant a severance, a continuance or anything else. We’re going to try it. It’s taken me six months in an effort to get this thing to the courthouse as it is. And Mr. Waide, I understand that you have just come into this case. Because of that, that’s the only reason I even took the matter up at all. But we are going to proceed with the trial of the case.
The Saltses were convicted at trial. Waide re-raised the conflict issue as a ground for a new trial. In response the judge said:
I think I need to make some observations concerning, first of all, the development of this case over a period of several years. The defendants from the very beginning had every opportunity to raise the question of conflict of interest as between the defendants. They were represented by counsel for the entire period of time until virtually the day before trial began.
Mr. Waide, I have great empathy for you having stepped in to this case at the last instant, but in circumstances like that, counsel entering the case kind of play the ball where it lies. What has happened up to that time is in this instance according to your theory of the case is unfortunate, but nevertheless, I can tell you and the Salts that I personally insisted that Mr. Thorne file motions, and only then did he respond with motions that I insisted with him that he, if he wished to ask for a change of venue that he do that. Finally he did. And this went on over a period of months, not days or weeks for that matter. This went on for a long time ....
Over the period of time that we’re talking about I do not know of any reason that motions could not have been filed. There are various dates set aside during every year of the calendar for the disposition of criminal and civil matters. All of these matters could have been raised at any time way in advance of this. And I suppose quite candidly I insisted that this case go to trial. And I think that’s my responsibility, simply because of the fact that it had been on the docket and it needed to be tried, and it did get tried
I think I have discussed sufficiently the attempted continuance at the last minute. I think this should be viewed again in the context of what I said earlier. I personally directed the filing of motions, and had they been timely filed there would be a total record of all this. But *487 these things were done—I don’t recall any particular argument concerning the conflict of interest. There was some discussion about a severance, which I denied. But again, in the context of when all this took place, I think it’s interesting that, you know, that has some bearing on this.
SR Vol. 10 at 797-98.
They appealed to the Mississippi Court of Appeals, arguing ineffective assistance of counsel based on (1) the joint representation, and (2) the denial of a seventh continuance. The Mississippi Court of Appeals published an opinion affirming the conviction. Salts, 984 So.2d 1050 (Miss.Ct. App.2008). Regarding the joint representation claims, it found that the Saltses had waived any objections to joint representation, and held in the alternative that under Mississippi law (and Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)) the Saltses were required to show an actual conflict, rather than simply the possibility of a conflict. Salts, 984 So.2d at 1061-62.

2. Supreme Court Precedents

Three Supreme Court cases, none directly on point, furnish guideposts for the circumstances under which joint representation of codefendants may result in a conflict of counsel’s duties that rises to a denial of counsel under the Sixth Amendment.
In Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Court held that when counsel for multiple defendants informs the criminal trial court of the potential for the joint representation to create a conflict of interest, and timely objects to the multiple representation, seeking appointment of separate counsel, the trial court must investigate the risk of a conflict of interest. Otherwise, the verdict must be automatically reversed, because prejudice is presumed where counsel timely objects to the joint representation. Id. at 484, 98 S.Ct. at 1179. The Court noted “that the failure, in the face of the representations made by counsel weeks before trial and again before the jury was empaneled, deprived petitioners of the guarantee of ‘assistance of counsel.’ ” Id.[4] The Court held that reversal should be automatic, but limited its holding to situations where the objection was (1) timely and (2) based on defense counsel’s representation regarding a conflict. Id.
The Court noted the danger that crediting counsel’s representation of a conflict could lead to abuses “for the purposes of delay or obstruction of the orderly conduct of a trial,” but said that its fact-limited holding “does not impair the trial court’s ability to deal with counsel who resort to such tactics” “[w]hen an untimely motion for separate counsel is made for dilatory purposes.” Rather, “[i]n this case ... [,] no prospect of dilatory practices was present[.]” Id. at 486-87, 98 S.Ct. at 1180. The dissent agreed, in discussing the requirement of timeliness, that “[ojrdinarily defense counsel has the obligation to raise objections to joint representation as early as possible before the commencement of the trial.” Id. at 495, 98 S.Ct. at 1184 (Powell, J., dissenting).
In Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Court again addressed the possibility of conflict of interest arising from multiple *488 representation of criminal defendants, but this time the defendant had raised no objection in the trial court. Id. at 337-38, 100 S.Ct. at 1712. The Court held that where counsel makes no objection, a court need not initiate an inquiry into the potential for a conflict of interest unless it “knows or reasonably should know that a particular conflict exists.” Id. at 347, 100 S.Ct. at 1717. On appeal or collateral review, the defendant who failed to object at trial must demonstrate that an actual conflict of interest adversely affected his defense. The Court characterized Holloway as requiring “state trial courts to investigate timely objections to multiple representation.” Cuyler, 446 U.S. at 346, 100 S.Ct. at 1717. But
“[djefense counsel have an ethical obligation to ... advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.”
Id. at 346-47,100 S.Ct. at 1717.
Mickens v. Taylor, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001), is the third case concerning conflicts arising from joint representation. This time, the Court held that even where the trial court knew or reasonably should have known of a conflict arising from joint representation, but there was no objection to the representation, a defendant, to prevail, must still demonstrate that counsel performed defectively as a result of the conflict. Id. at 173-74, 122 S.Ct. at 1245. The Court reiterated that “Holloway ... creates an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection[.]” Id. at 168, 122 S.Ct. at 1241-42.

3. Legal Rules Applied

The Mississippi Court of Appeals held, as an alternative to its waiver finding, that “because the Saltses never showed an actual conflict of interest, there was no need for any inquiry by the trial court into the propriety of joint representation.” Salts, 984 So.2d at 1063. The court addressed the two primary cases cited by the Saltses in their brief, Smith v. State, 666 So.2d 810 (Miss.1995), and Armstrong v. State, 573 So.2d 1329 (Miss.1990), both of which had reversed a verdict where there was an actual conflict of interest.[5] It found these cases distinguishable on the ground that no actual conflict had been demonstrated here.
Instead, the court relied on its previous decision in Witt v. State, 781 So.2d 135 (Miss.Ct.App.2000), which held that without reason to suppose that an actual conflict existed, the trial court was not required to inquire into the propriety of multiple representation. Id. at 138. The Witt court derived this holding almost word-for-word from Cuyler’s dictate that “unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.” Witt, 781 So.2d at 138, quoting Cuyler, 446 U.S. at 347, 100 S.Ct. at 1717. The Mississippi Court of Appeals applied Witt to say that “a court needs to conduct an inquiry into the propriety of a joint representation only when an actual conflict has been shown.”
The majority opinion faults the state court for failing to acknowledge Holloway or the fact that Holloway and Cuyler cre *489 ate different rules. It says that the state appeals court applied a rule directly contrary to Holloway’s requirement of investigation of timely objections. It concludes that the rule applied by the state court (a court need conduct an inquiry only when an actual conflict has been shown) directly conflicts with Holloway’s holding (where defendant’s counsel timely objects and says there is a conflict, the court must initiate an inquiry), and that relief is thus warranted under § 2254(d)(1).
As I stated at the outset, I believe this reasoning and conclusion are seriously mistaken in three ways: the majority opinion evaluates the state court’s reasoning rather than its decision; it ignores the lack of briefing on Holloway at the state court; and it assumes that Holloway compels relief despite considerable evidence that the motion in this case was untimely and that the trial court clearly found it to be untimely.
In the first place, the majority opinion relies entirely on the reasoning of the state court to invalidate the state court’s conclusion, which as I will show is otherwise easily defensible. This is error under Neal v. Puckett, supra, a case decided by our court en banc[6] Neal, in turn, derives from AEDPA, which authorizes federal courts to grant habeas relief only for state court “decisions,” not “opinions,” that contravene its terms, 28 U.S.C. § 2254(d); see also Harrington, supra, — U.S.-, 181 5. Ct. at 784 (AEDPA refers only to a “decision” resulting from an adjudication of a petitioner’s claim on the merits).
Second, the majority opinion faults the state court for “ignoring the existence of’ Holloway’s “rule” of automatic reversal-a rule, by the way, that was never cited in either party’s briefing at the Mississippi Court of Appeals. The briefs filed in the state court of appeals focused on Cuyler and state law. The Saltses’ initial brief to the Court of Appeals did not cite Holloway for the purportedly relevant automatic-reversal rule; their reply brief cited Holloway’s discussion of the sufficiency of counsel’s timely objection to demonstrate prejudice, but still did not cite Holloway’s holding.
Nevertheless, the majority opinion is premised on the square applicability of Holloway and the majority’s view that the state court contradicted Holloway by requiring a party to show an actual conflict. Two mistakes inhere in this reasoning. The Supreme Court holds that even if a state court fails to mention controlling precedent (of the Supreme Court), the state’s ultimate decision may still be supportable for AEDPA purposes. See Early v. Packer, supra. Additionally, the majority’s parsing of Holloway begs the relevant question under AEDPA, which is whether fairminded jurists can disagree about whether Holloway applies here. See Harrington v. Richter, supra. The state court could reasonably have concluded that Holloway is inapposite because counsel’s motion was untimely raised. So viewed, the *490 state court’s decision is perfectly consistent with Holloway as well as Cuyler and Mickens.
Thus, the most important error in the majority is its assumption that the motion for separate counsel was timely in the face of overwhelming circumstances to the contrary and- a state court finding that deserves deference under § 2254(e)(1). The majority opinion finds timeliness because Waide objected “before trial began, before the jury was selected and sworn.” It conclusorily asserts that the motion was not “made for dilatory purposes.” It says that “the record here does not support a conclusion that Waide’s motion was an untimely motion ... made for dilatory purposes.” These contentions are indefensible.
The Saltses were represented continuously by reputable, highly qualified counsel, yet they missed two years of opportunities to object to the joint representation. Further, they forewent two final pretrial motion deadlines (the August 5 and September 27 deadlines), for at least one of which Thorne had filed several motions.
The majority opinion relies heavily on the special circumstances faced by attorney Waide in this case: it concludes that his motion for separate counsel could not have been made for dilatory purposes because he had just begun representing the Saltses and had no previous opportunity to lodge this objection. It suggests this consideration is “[pjerhaps more important” than the timeliness of the motion. But this is not accurate. Holloway applies only to timely objections to joint representation; counsel’s dilatory purpose is not an additional element that Holloway demands to establish untimeliness. But if this were the case, the record reasonably supports a conclusion that the motion was filed for dilatory purposes. Waide made this clear in the hearing, as he also argued a motion to continue trial and contended that he had insufficient time to prepare. Obviously, he felt his clients would benefit from an additional delay to the trial. Moreover, since no previous counsel had pointed out this alleged conflict, the objective support for Waide’s motion is doubtful.
In fact, the trial court’s conclusion here, that the motion constituted another delay tactic, was reasonable for precisely the reasons contemplated by Cuyler, Mickens, and Holloway: “Defense counsel have an ethical obligation to ... advise the court promptly when a conflict of interest arises during the course of a trial. [Tjherefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist.” Cuyler, 446 U.S. at 346-47, 100 S.Ct. at 1717. Given that two motion deadlines and two years had passed, and the date for trial had come, the trial court had every right under Cuyler to assume that the representation entailed no conflict.
The majority opinion implies that when Waide took over, any motions which he concluded were advisable were timely, regardless of any deadlines faced by previous counsel. This is unrealistic as a matter of court management, and inconsistent with the record. The trial court, whose explanation after trial is not recounted by the majority opinion, places the untimeliness in full context. The trial court clearly found that the motion was not timely. This conclusion was not disputed by the Mississippi Court of Appeals and would easily justify a decision not to address Holloway in its opinion.
Perhaps the majority simply overlooked this post-trial colloquy. Instead of reflecting on the judge’s extended explanation why the motion was not timely, the majority opinion exclusively cites the trial court’s somewhat confusing answer to the initial *491 motion on the morning of trial, in which the court said, “this is another of the last-minute tactics[.]” The majority conclude,
Even if this oblique reference ... constitutes a finding that Waide’s motion was made for dilatory purposes, this conclusion rests on an unreasonable determination of the facts. The reason [the judge believed the motion to have been a ‘last-minute tactic’ was that he believed he had already addressed the issue.
Thus, “to the extent the trial court declined to investigate Waide’s objection because it was dilatory, its conclusion is not entitled to AEDPA deference because it rests on an unreasonable determination of facts.” Of course, it is not clear at all that this was the judge’s reason, in light of his post-trial explanation that the motion was obviously untimely and should have been filed, if at all, by Thorne prior to the previous deadlines. Additionally, the majority opinion skips the proper analysis. Untimeliness is a state-court finding of fact, which the Saltses must rebut under AEDPA by clear and convincing evidence. § 2254(e)(1). See Valdez v. Cockrell, 274 F.3d at 948 (presumption of correctness applies to state court findings, both explicit findings and findings which can be implied from explicit conclusions of law). This they did not do. The majority’s conclusion that the state court’s decision was “contrary” to Holloway depends crucially on the majority’s own almost-undefended factual finding that the motion was timely, a finding that requires it to ignore not only the years of continuances and missed deadlines that preceded that motion, but also the trial court’s extended explanation of the motion’s untimeliness.
The bottom line is that to apply Holloway, the majority must conclude not only that Waide’s motion on the day of trial was timely, but that the motion was so clearly timely that no fairminded jurist could disagree. Harrington, supra. Is it possible that no fairminded jurist could think a motion filed after more than two years and two motions deadlines was untimely? I think not. I think the record demonstrates that the Mississippi courts could reasonably have concluded that the Salts-es, having failed to prove any actual conflict imposed on their trial counsel, or any disadvantage to their defense, were unable to satisfy Cuyler or Mickens. The state court’s decision is consistent and not in conflict with the holding of Holloway because the objection to joint representation was untimely. Habeas relief should be denied.

. I do not quarrel with the majority's resolution of the due process claim, nor with its conclusion that the state court’s finding of waiver of any objection to joint representation was unreasonable under § 2254(d)(2). The majority should have added that the Saltses bore the burden of overcoming the state court’s waiver finding by clear and convincing evidence. § 2254(e)(1). See Valdez v. Cockrell, 274 F.3d 941, 947 (5th Cir.2001).

. The State requested that Farese not be permitted to withdraw until the Saltses obtained new counsel. The Saltses were ordered to appear with new counsel at the September 29, 2003 hearing. Id. at 66.

. Ultimately the trial would be held in a neighboring county, further delaying it, at Defendants' request.

. In Holloway, joint counsel had been appointed for defendants on August 5, and counsel had moved on August 13 for the court to appoint separate counsel. The court denied the motion without adequate inquiry, and the question before the Supreme Court was whether such denial warranted automatic reversal, or reversal only if the defendants could demonstrate prejudice.

. Of note, both these cases cite Holloway solely for its dicta regarding the nature and dangers of conflicts.

. To the extent that evaluating the reasoning of the state court is inevitable, the proposed opinion errs in its reading of the state court’s opinion. The majority thus states: “The state appeals court[ ] wrongly held that a defendant must always show actual conflict, even where the trial court failed to investigate counsel’s timely motion.” This is simply not what the state court said; the state court did not actually say that its holding would apply even where the trial court failed to investigate a timely motion. The state court opinion is more fairly read as stating the rule (enunciated by Cuyler, which it quotes) that a showing of a particular conflict is required absent "special circumstances” {Cuyler s words) such as a timely objection. If the state court assumed the objection was not timely, a perfectly reasonable and almost certainly correct assumption, then no special circumstances existed, and counsel should have demonstrated an actual conflict.