# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00936-COA

**MICHAEL STEPHNEY, SR. A/K/A MICHAEL STEPHNEY**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/25/2023 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/03/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Michael Stephney Sr. was jointly indicted with his son, Michael Stephney Jr. for the first-degree murder of Victor Hallman and attempted murder of Dexter Hallman. The indictment also included a firearm enhancement. Stephney Sr. and Stephney Jr. were tried jointly on April 18, 2023. At the close of the State's evidence, Stephney Jr. was granted a directed verdict and dismissed from the trial. The jury convicted Michael Stephney Sr. of second-degree murder and attempted murder, with a firearm enhancement. For his convictions of second-degree murder and attempted murder, the trial court sentenced Stephney Sr. to two thirty-year terms in the custody of the Mississippi Department of

Corrections (MDOC), with twenty years to serve and ten years suspended, and five years of post-release supervision. For the firearm enhancement, Stephney Sr. was sentenced to five years in the custody of the MDOC. The court ordered all sentences to run concurrently. Stephney Sr. appeals and argues that his two lawyers' failure to move for a severance from Stephney Jr. amounted to ineffective assistance of counsel or, in the alternative, the trial judge erred in not assuring that Stephney Sr. was aware of the potential conflict and that he knowingly waived it.

## FACTS AND PROCEDURAL BACKGROUND

¶2. On November 3, 2018, Dexter Hallman and Stephney Sr. exchanged a couple of threatening phone calls and text messages. During the course of their phone conversations, they agreed to have a "fair fight,"[1] allegedly over a woman. Dexter and his father Victor Hallman drove to the Lil Wayne convenience store that Stephney Sr. owned in Greenville, Mississippi. Upon their arrival, Dexter got out of his vehicle and walked toward the store. Stephney Jr. handed Stephney Sr. a gun. Dexter, seeing this, jogged back to his car and drove away. Stephney Sr. aimed the gun in Dexter and Victor's general vicinity and fired multiple shots,[2] resulting in Victor being shot. Dexter drove Victor to the emergency room, where Victor ultimately died from the gunshot wounds to his left arm and chest.

¶3. In April 2019, Stephney Sr. and Stephney Jr. were jointly indicted by a Washington

---

[1] The record described a "fair fight" to mean a fight without weapons.

[2] The store was located near a busy highway, and several cars were passing by as Stephney Sr. fired the gun, creating an even more dangerous situation given the proximity of the traffic.

County grand jury for the first-degree murder of Victor Hallman and the attempted murder of Dexter Hallman, with a firearm enhancement. Stephney Sr. was represented by Wayne Lee, and Stephney Jr. was represented by Stanley Perkins. Prior to the initial trial setting, on January 18, 2023, at a pretrial hearing, Stephney Sr. agreed to also be represented by Perkins. The court ensured Stephney Sr. understood the change in representation and advised him of the risks involved:

> THE COURT: All right. This case is set for trial. We're going to move it to start tomorrow.[3] And I understand Mr. Lee has Covid and is not able to be here. But I also understand that you're wanting Mr. Perkins to represent you?
>
> STEPHNEY SR.: Yes, sir.
>
> THE COURT: All right. Before we can do that, I need to make sure you understand a couple of things, all right? First of all, generally, when you have three people charged in a case, each has their own lawyer. Okay?
>
> . . . .
>
> Many times, there's what's called plea negotiations. In other words, a defendant will – his lawyer will talk with the State, and the State may or may not say: Well, I tell you – if you'll – if you're willing to enter a guilty plea, then we'll offer you a lesser – either a lesser crime or lesser time or both.
>
> And it may be that one lawyer representing three people might find that hard to do. In other words, your interests may be different from Stephney, Jr. and Mr. Jarmon.[4] My question is, if you want Mr. Perkins to represent you,

---

[3] The case did not go to trial the following day. The trial began on April 18, 2023.

[4] Nathaniel Jarmon was a third co-defendant and was indicted for tampering with evidence, but he pled guilty before trial.

3

and you know all that – in other words, you know there is a conflict or a potential conflict, are you willing to waive that or say that you don't care about that; and you still want him to be your lawyer?

**STEPHNEY SR.:** Yes, sir, I still want him.

**THE COURT:** I'm sorry?

**STEPHNEY SR.:** I still want him to be my lawyer.

**THE COURT:** Okay. So you're saying that even though there may be a conflict and there may be a problem, you still want him to represent you?

**STEPHNEY SR.:** Yes, sir.

**THE COURT:** Okay. Anybody force you or get you to say that?

**STEPHNEY SR.:** No, sir.

**THE COURT:** Anybody promise you anything of value?

**STEPHNEY SR.:** No, sir.

¶4.    When the trial began three months later on April 18, 2023, Lee was no longer ill and was able to attend trial. On the morning of the trial, Lee and Perkins formally requested the court's approval of their dual representation of Stephney Sr. and Stephney Jr.:

**ATTORNEY LEE:** Just a procedural matter, Judge. You know the last time this case was set, I was having Covid issues and so Mr. Perkins kind of took the whole case over.

**THE COURT:** Mm-hmm.

**ATTORNEY LEE:** We've talked, and although I'm named as the first defendant, we would ask that Mr. Perkins kind of take the lead and I'll kind of follow him, if that's okay with the Court.

4

| | |
|---|---|
| **THE COURT:** | Well, let me make sure now. Are you representing Senior? |
| **ATTORNEY LEE:** | I'm resenting Senior, yes, sir. |
| **ATTORNEY PERKINS:** | Senior. I – I represent Junior. |
| **THE COURT:** | Okay. |
| **ATTORNEY PERKINS:** | But – but we're – we're on the same page. |
| **ATTORNEY LEE:** | But it's all kind of – it's going to kind of overlap, we think, anyway so. |
| **THE COURT:** | Well, and that's fine. |

¶5.     Once the court recognized the dual representation, the State called its first witness, Sergeant Jeremy Arendale. Sergeant Arendale testified that at the time of the shooting, he was a supervisor in the criminal investigation division at the Greenville Police Department. He testified that the Greenville Police Department was informed of a homicide on Highway 82 in Greenville at the Lil Wayne convenience store. Sergeant Arendale went to the scene of the shooting and found a .40-caliber handgun on the seat of a vehicle he believed belonged to Stephney Sr. parked in front of the store. During the investigation, he learned there was video surveillance inside the store. He watched the video of the shooting, which was later admitted into evidence. Sergeant Arendale testified the firearm found in the car during the investigation appeared to be the same firearm in the surveillance video.

¶6.     The surveillance video depicted Victor and Dexter pull into the Lil Wayne store parking lot. Dexter walked toward the store, and Victor remained near the vehicle. While Stephney Sr. and Dexter walked toward each other, Stephney Jr. handed Stephney Sr. a gun.

5

Upon noticing the gun, Victor and Dexter retreated back to their vehicle. Stephney Sr. continued to walk toward them and shoot the gun multiple times as Victor and Dexter got into the vehicle and drove away.

¶7.     The State then called Investigator Jarvis Ford to testify. Investigator Ford was employed with the Greenville Police Department in the criminal investigations division at the time of the shooting. Investigator Ford went to the Delta Regional Medical Center in Greenville, where Victor Hallman was being treated. Investigator Ford testified that after he saw Victor, he went into the hospital parking lot and noticed the back window of a Honda vehicle was shattered.[5] He also testified that there was blood in the passenger seat and against the armrest. After taking pictures of the vehicle, Investigator Ford left the hospital and went to the Lil Wayne store. While investigating inside the store, he also watched the surveillance video.

¶8.     After the State's last witness testified, Perkins moved for a directed verdict on behalf of Stephney Jr., and Lee moved for a directed verdict on Stephney Sr.'s behalf. The court granted the directed verdict as to Stephney Jr., but denied Stephney Sr.'s motion. Perkins then called Dexter Hallman as an adverse witness. Dexter explained he and his father, Victor Hallman, went to the Lil Wayne store intending to "fight" Stephney Sr. Prior to their arrival, during a phone call between Dexter and Stephney Sr., Dexter told Stephney Sr. to "[p]ut your gun down, and let's fight." "Those were [Dexter's] exact words." However, upon Dexter and Victor's arrival, Stephney Sr. fired multiple bullets from his .40-caliber handgun that injured

_____

[5] The vehicle was later discovered to be the vehicle that Dexter and Victor were in at the time of the shooting.

and eventually lead to Victor's death.

¶9.     After Dexter's testimony, the defense rested. Lee gave the initial closing argument, and Perkins gave the final closing argument for the defense. The jury found Stephney Sr. guilty of second-degree murder and attempted murder, with a firearm enhancement. Stephney Sr. was then sentenced on each count to thirty years in the custody of the MDOC, with twenty years to serve and ten years suspended, plus five years of post-release supervision, to run concurrently. The trial court also sentenced Stephney Sr. to five years in the custody of MDOC for the firearm enchantment, to run concurrently with his other sentences. Stephney Sr. filed a motion for a new trial, which was denied. He now appeals and raises two issues: (1) whether the failure of counsel for Stephney Sr. to move for a severance from Stephney Jr. amounted to ineffective assistance of counsel or, in the alternative, (2) whether the trial judge erred in not assuring that Stephney Sr. was aware of the potential conflict and that he knowingly waived it.

## ANALYSIS

¶10.   We first address whether Stephney Sr. received ineffective assistance of counsel by not seeking a severance from Stephney Jr. Second, we consider whether the trial court erred by not informing Stephney Sr. of the potential conflict of joint representation and did not ensure he knowingly waived it.

¶11.   Stephney Sr. argues that his trial lawyers were ineffective in their dual representation because neither counsel moved for a severance from Stephney Jr. This Court reviews claims of ineffective assistance of counsel de novo. *Taylor v. State*, 167 So. 3d 1143, 1146 (¶5)

7

(Miss. 2015). "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)). However, these claims will be addressed on direct appeal when "[(1)] the record affirmatively shows ineffectiveness of constitutional dimensions, or [(2)] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* This Court "may also address such claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.*

¶12.    A strong presumption, although rebuttable, exists that counsel's performance was effective. *Gilley v. State*, 748 So. 2d 123, 129 (¶20) (Miss. 1999). To prove his counsel's assistance was ineffective, Stephney Sr. must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the defendant cannot satisfy *Strickland*'s two-pronged test, his claim fails. *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶13.    There is also a presumption that decisions made by defense counsel are strategic, and this Court "will not second-guess counsel's decisions that fairly may be characterized as strategic." *Shinn v. State*, 174 So. 3d 961, 966 (¶12) (Miss. Ct. App. 2015). This Court has held that "[c]ounsel's choice of whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy." *Hill v. State*, 850 So. 2d 223, 226 (¶14) (Miss. Ct. App. 2003) (citing *Scott v. State*, 742 So. 2d 1190, 1196 (¶14) (Miss. Ct. App. 1999)). Even the decision of "whether to move for

8

severance [is] within the purview of trial strategy." *Cox v. State*, 793 So. 2d 591, 600 (¶41) (Miss. 2001). Furthermore, "[h]aving a trial strategy negates an ineffective assistance of counsel claim, regardless of counsel's insufficiencies." *Hall v. State*, 735 So. 2d 1124, 1127 (¶10) (Miss. Ct. App. 1999).

¶14. Stephney Sr. argues that his lawyers rendered ineffective assistance by not getting the trial severed because Perkins conceded in his opening statement that Stephney Sr. may not have been justified in the shooting by stating, "[M]aybe he overdid it." He also argues that Perkins's elicited testimony by Investigator Ford exculpated Stephney Jr. at the expense of Stephney Sr. with the following dialogue:

| | |
|---|---|
| **ATTORNEY PERKINS:** | And Junior's role, if any, in this, based on your investigation, was handing a gun to his father? |
| **INVESTIGATOR FORD:** | Yes. |

Investigator Ford's testimony continued, and Perkins again diminished Stephney Jr.'s involvement in the incident.

| | |
|---|---|
| **ATTORNEY PERKINS:** | Okay. So this is really between Senior and Dexter Hallman? |
| **INVESTIGATOR FORD:** | Yes. |

¶15. We find Stephney Sr.'s ineffective-assistance-of-counsel claim is based on facts not fully apparent from the record, including facts related to his counsel's trial strategy and tactics, such as whether to file a motion for severance or ask certain questions. Perkins's strategy was likely aimed at exculpating Stephney Jr., emphasizing that his involvement was limited to handing his father the gun. This approach did not undermine Stephney Sr.'s

9

self-defense claim, as Perkins was not attributing blame to Stephney Sr. for his son's actions but merely seeking to absolve his own client of culpability. The record before us does not affirmatively show whether counsel was ineffective of constitutional dimensions; and again, Stephney Sr.'s ineffective-assistance-of-counsel claim is based on facts not fully apparent from the record. Accordingly, we deny this claim without prejudice to allow Stephney Sr.'s right to assert it in a properly filed motion for post-conviction collateral relief.

¶16. Stephney Sr. also argues that the trial court erred in allowing the two attorneys to jointly represent Stephney Sr. and Stephney Jr. during the trial because an actual conflict existed, which rendered their counsel ineffective.

¶17. "Conflict-of-interest claims involving attorneys in criminal cases are a species of ineffective assistance of counsel under the Sixth Amendment." *Magee v. State*, 349 So. 3d 734, 742-43 (¶17) (Miss. Ct. App. 2022) (quoting *Galloway v. State*, 298 So. 3d 966, 974 (¶43) (Miss. 2020)). The United States Supreme Court and the Mississippi Supreme Court have "repeatedly held that joint representation of co-defendants is not per se violative of the Sixth Amendment right to effective assistance of counsel." *Stringer v. State*, 485 So. 2d 274, 275 (Miss. 1986) (citing *Holloway v. Arkansas,* 435 U.S. 475 (1978)). Indeed, "[r]epresenting multiple defendants in a criminal case can be accomplished without violating the lawyer's duty to any of his clients, and one attorney can indeed upon occasion meet the needs of all better." *Littlejohn v. State,* 593 So. 2d 20, 26 (Miss. 1992) (citing *Holloway*, 435 U.S. at 482). "It has been firmly established that a potential for conflict or hypothetical or speculative conflicts will not suffice for reversal." *Stringer*, 485 So. 2d at 275. A conflict

10

must be actual in order for the conviction to be reversed. *Id.* (citing *United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978)).

¶18.    A conflict is actual "if a defense attorney owes duties to a party whose interests are adverse to those of the defendant. . . . The interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client." *Magee*, 349 So. 3d at 743-44 (¶20) (quoting *Witt v. State*, 781 So. 2d 135, 137 (¶7) (Miss. Ct. App. 2000)) (quoting *Irving v. Hargett*, 518 F. Supp. 1127, 1144 (N.D. Miss. 1981)). Thus, courts are not required to consider "speculative possibilities of conflicts in attempts to plea bargain or use other possible defenses that were not raised at trial." *Id.* at 744 (¶20) (quoting *Stringer*, 485 So. 2d at 275).

¶19.    When an attorney represents the accused and has an actual conflict of interest, the accused has "received ineffective assistance of counsel as a matter of law," and "reversal is automatic irrespective of a showing of prejudice unless [the accused] knowingly and intelligently waived his constitutional right to conflict[-]free representation." *Armstrong v. State*, 573 So. 2d 1329, 1335 (Miss. 1990). "Under the rules governing professional responsibility, consent of a criminal defendant is a necessary pre-requisite to joint representation, and trial court inquiry into whether the defendant has made a knowing and voluntary waiver of his right to conflict-free counsel is imperative." *Id.* at 1334 (emphasis omitted) (citing *Burger v. Kemp*, 483 U.S. 776, 798 (1987)). "In order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively

11

participate in the waiver decision by eliciting a statement in narrative form from the defendant in indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel." *Littlejohn*, 593 So. 2d at 25 (quoting *Alvarez*, 580 F.2d at 1259-60).

¶20.    In *Magee*, 349 So. 3d at 741 (¶13), the defendants, Haynes and Magee, were jointly indicted on multiple charges, including kidnapping, sexual battery, attempted murder, and conspiracy. They were tried together and represented by the same two attorneys. *Id.* Prior to trial, the court advised both defendants of the potential conflicts that could arise from joint representation. *Id.* Haynes and Magee signed a "Waiver of Conflict of Interest," which outlined the risks associated with dual representation. *Id.* at 741-42 (¶13). Before accepting the waivers, the court held a hearing on the record to confirm that both defendants understood their constitutional right to effective legal counsel. *Id.* at 742 (¶13). The court also specifically cautioned them about the dangers of being represented by the same attorneys. *Id.* Despite the warnings, Haynes and Magee chose to proceed with joint representation, and the circuit court accepted their waivers before moving forward with the trial. *Id.* At the trial's end, Magee was convicted of kidnapping and conspiracy, while Haynes was found guilty of kidnapping, sexual battery, and conspiracy; both were acquitted of attempted murder, and Magee was also acquitted of sexual battery. *Id.* at (¶15). After their post-trial motions were denied, they appealed, claiming ineffective assistance due to joint representation by the same attorneys. *Id.* at (¶16). However, the record showed that both defendants knowingly and intelligently waived their right to conflict-free counsel, requesting

joint representation despite being fully informed of the risks. *Id.* at 746 (¶24). The circuit court thoroughly addressed the constitutional concerns through written waivers and an on-the-record hearing, and the appellate court affirmed on this issue. *Id.*

¶21. Here, a potential conflict arose when Perkins began representing both Stephney Sr. and Stephney Jr. after Lee was diagnosed with COVID-19 and was potentially unavailable to represent Stephney Sr. Like *Magee*, the judge took steps to ensure Stephney Sr. knowingly and intelligently waived his right to conflict-free representation by asking the questions quoted above. *See supra* ¶¶3-4. Stephney Sr. never revoked his waiver or indicated a potential conflict with a dual representation. He never advised the trial court that he was no longer in agreement with the joint representation, and he clearly articulated on the record at the pre-trial hearing.

¶22. Further, the Supreme Court has held that "[i]t is critically important that trial courts address potential conflicts and balance a defendant's right to choose his attorney in considering those potential conflicts." *Magee*, 349 So. 3d at 746 (¶24). The trial court did just that by eliciting statements from Stephney Sr. confirming that he understood the risks of joint representation and knowingly waived his right to conflict-free counsel. During the hearing, the State clarified that the addition of Perkins as counsel was not solely due to Lee's COVID-19 diagnosis, asking whether the waiver was made "because Wayne Lee can't be here, because of the illness?" The court responded, "[Lee] might be able to be here tomorrow," and Perkins confirmed that Lee would return "as soon as possible." Once Lee recovered from COVID-19, both attorneys resumed joint representation of Stephney Sr. and Stephney Jr. In

13

fact, on the morning of trial, Lee formally requested the court's approval for joint representation, stating, "[W]e would ask that Mr. Perkins kind of take the lead and I'll kind of follow him, if that's okay with the Court." The record clearly shows that joint representation occurred as Perkins continued to examine witnesses and delivered the closing arguments for Stephney Sr., even after Stephney Jr. was dismissed from the case. After review, we find that Stephney Sr. knowingly and intelligently waived his constitutional right to conflict-free representation. *See, id.* Further, we find there was not an actual conflict but a joint defense with both lawyers clearly representing both defendants. This issue is without merit.

## CONCLUSION

¶23.   In conclusion, we deny Stephney Sr.'s claim that he received ineffective assistance of counsel by not seeking a severance from Stephney Jr.'s case without prejudice to Stephney Sr.'s right to assert it in a motion for post-conviction collateral relief. Nonetheless, we also find that Stephney Sr. knowingly and intelligently waived his constitutional right to conflict-free representation. Accordingly, we affirm Stephney Sr.'s convictions and sentences.

¶24.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON. P.JJ., WESTBROOKS, McDONALD, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**